In the Matter of SUZANNE N.Y., a Child Alleged to be Permanently Neglected. JEWISH CHILD CARE ASSOCIATION, Appellant; ELAINE S.Y., Respondent.

First Department, December 9, 1980, as amended February 3, 1981

### APPEARANCES OF COUNSEL

*Helen L. Buttenwieser* of counsel (*London & Buttenwieser*, attorneys), for appellant.

*A. Isadore Eibel* for respondent.

*Janet R. Fink* of counsel (*Charles Schinitsky*, attorney), for the infant child.

### OPINION OF THE COURT

CARRO, J.

This is the fourth appeal to this court involving this child (54 AD2d 673; 66 AD2d 723; 73 AD2d 154), now over eight and one-half years of age. She was born on April 15, 1972 and was placed in foster care on an emergency basis approximately one month later, after an incident which resulted in respondent natural mother's admission to Bellevue Hospital Center Psychiatric Division. She has never since lived with her natural mother. Suzanne was adopted in April, 1976, having resided with her foster parents since August, 1972, when she was four months old. Her younger

placed with foster parents about one month after birth, when the mother was again admitted to the Bellevue Psychiatric Division as schizophrenic.

This court has traced in detail the procedural, factual and psychiatric history of this case (and we view the many proceedings which have developed concerning the parental rights to these children from 1972 until the present as one "case" for the purpose of resolving the procedural and human tangle which has resulted) in the *Matter of Suzanne N.Y.* (66 AD2d 723 [see dissent]) and in *Matter of Hime Y.* (73 AD2d 154 [opn. of MURPHY, P. J.], March 11, 1980).

The court in *Hime (supra)* in making extensive findings of fact concerning the natural mother's substantial history of mental illness and current mental condition did not limit itself to the child Hime, but of necessity included many references to Suzanne and to the "children". It concluded (p 160), "The medical evidence establishes that between 1971 and 1978 there has been no measurable change in the mother's mental status. Every psychiatrist * * * concluded that she could not care for her children * * * Surely we cannot sit back patiently in the hope that the mother will, at some unknown future date, become readjusted under psychiatric treatment. The statute requires that we act now to protect the children.

"The 'clear and convincing' proof * * * in this record has established that Hime [or Suzanne] would be in danger of becoming a 'neglected child' * * * if she were returned to the mother because of the mother's 'mental illness'. Over the years, the mother has been maintained on continual medication to remain minimally functional. She cannot be trusted, either now or in the foreseeable future, to supply the child with necessaries, even if financially able to do so * * * or to provide the child with proper supervision * * * While the mother's attendance record shows some interest and concern for the children, the overriding consideration remains that her 'mental illness' effectively prevents her from properly caring for them."

We concur in these findings and conclusions, which apply to the natural mother as much now as then and as much to Suzanne as to Hime. The issue, the mental conditon of the

mother, is the same. Must we now remand to the Family Court for further reconsideration of the same issue? And then be subjected to still another appeal? The Hime court found it necessary to terminate the natural mother's parental rights to Hime, just as we now find it necessary to terminate her parental rights to Suzanne, and on the same ground.

Respondent urges that the issue of the natural mother's mental condition is not before us and was not before the court below, since, on the previous appeal (66 AD2d 723), the petitioner agency had not appealed from that portion of the Family Court's order which dismissed the cause of action alleging the mother was "mentally ill" and in its briefs had only pressed the point that Suzanne was a "permanently neglected child", and therefore this court had only remanded on the issue of neglect and failure to properly plan for Suzanne's care. However, the entire transcript of the previous consolidated trial was offered by the respondent and admitted without objection in the trial now before us. This placed into evidence the agency case records for both children and the prior Family Court records including the previous Family Court mental health studies, previous hospitalizations and testimony concerning the mental capacity of the natural mother to care for her children.

This unfortunate situation cannot be permitted to continue, marked by further trials and appeals contesting the custody of this child. In the *Matter of Sanjivini K.* (40 NY 2d 1025, 1027) the Court of Appeals stated, "the Appellate Division, given its broad power of review over facts and its equally extensive power to exercise discretion, may choose to initiate, consolidate, or review all proceedings heretofore initiated and any which may hereafter be brought. The subject of all these proceedings is a young child, and ingenuity and energy should be brought to bear, within the limits of due process of law and the applicable statutes, promptly to make appropriate provision for her welfare. It is not mere rhetoric to say that a child in need or distress is a ward of the State which exercises its powers *parens patriae* through the judicial branch."

This court having reviewed the facts and past proceed-

ings in this case determines that extraordinary circumstances exist, to wit, the mental illness of the natural mother and her inability to care for Suzanne. This being the case the court has the power to intervene and terminate parental rights for the purpose of effectuating the child's best interests. *(Matter of Bennett v Jeffreys*, 40 NY2d 543). The Legislature has evidenced its intent that a child's best interest includes growing up in a permanent home, with a normal family atmosphere, and a degree of stability that is so vital in a child's formative years. When the natural parent cannot provide this, as in this case, a permanent alternative should be sought. (Social Services Law, § 384-b, subd 1.)

Suzanne has been with her foster parents since 1972. These are for all intents and purposes the only parents she knows. It is important that this relationship be further stabilized.

The order of the Family Court, New York County (KAPLAN, J.), entered on November 30, 1979, dismissing the petition, and the order of said court, entered on June 24, 1980, denying a second motion for reconsideration of the order of dismissal, entered on November 30, 1979, of the parental rights termination proceeding brought by the petitioner-appellant Jewish Child Care Association (the Agency) against the respondent-respondent Elaine S.Y., (the natural mother), regarding her daughter, Suzanne N.Y., should be unanimously reversed on the law and the facts and as a matter of discretion in the interest of justice, the motion for reconsideration should be granted and the matter remanded for the entry of judgment terminating parental rights, without costs.

MURPHY, P. J., ROSS, MARKEWICH and LUPIANO, JJ., concur.

Order, Family Court, New York County, entered on November 30, 1979 and June 24, 1980, reversed on the law, and the facts, and as a matter of discretion in the interest of justice, and the matter remanded for the entry of judgment terminating parental rights, without costs and without disbursements.