■ THOMAS J. D., Appellant, v CATHARINE K. D., Respondent. — In a matrimonial action in which the parties were previously granted a divorce, the plaintiff husband appeals from an order of the Supreme Court, Westchester

County, dated March 21, 1980, which, after a hearing, *inter alia,* denied his motion to modify the judgment of divorce by transferring custody of the children of the marriage to him. Order reversed, on the law, without costs or disbursements, plaintiff's motion granted and matter remitted to Special Term to fix appropriate visitation by the defendant wife in accordance herewith. The parties were married in March, 1966 and were divorced in June, 1979, after having lived apart for more than one year pursuant to a valid separation agreement (see Domestic Relations Law, § 170, subd [6]). There are two children of the marriage, fraternal twins Seth and Kelly, now seven years old. The separation agreement provided that custody of the children was to be retained by the defendant wife, with liberal visitation rights to the plaintiff husband. The subsequent judgment of divorce contained the same custody provisions. In July, 1979 the plaintiff moved to modify the judgment by transferring custody of the children to him. He claimed that the change in custody was necessary and appropriate because of the defendant's deteriorating mental health. As demonstrated by the papers and exhibits submitted at Special Term, and by the testimony adduced at the hearing held on the plaintiff's motion, the defendant is a manic-depressive, suffering from bi-polar mental illness. Her ailment is characterized by episodes of severe mood disorder followed by periods of complete remission. She is required to take lithium carbonate five or six times a day, and must sometimes take thorazine as well. In addition, she undergoes supportive psychotherapy. Her condition is irreversible and, even with treatment, she will continue to suffer periodic episodes of mental illness requiring her hospitalization approximately twice a year for 5 or 10 days at a time. According to medical evidence presented at the hearing, the onset of the manic phase of the defendant's illness is generally characterized by physical symptoms. She may complain of weakness, a tingling in her fingers, and an inability to sleep. When in the manic phase, she engages in bizarre behavior and suffers from hallucinations and delusions usually focusing on matters of religion including ideations involving the devil. Numerous incidents were recounted in which the defendant had acted in an entirely irrational manner while in the throes of her illness. The defendant did not deny that she is ill. She argued, however, that the plaintiff was aware of her illness when they married and when he entered into the separation agreement which provided that she would retain custody of the children. She maintained that she was always able to recognize the signs of the onset of her manic phase so that she could make provisions for the children before the illness took its full effect. The plaintiff, on the other hand, claimed that the defendant's illness had become progressively worse. He disputed her contention that she was always able to recognize the beginning symptoms of her illness. He argued that, as the children grew older, they would be more adversely affected by their mother's periodic episodes of bizarre behavior and that, having remarried a woman who genuinely cared for his children, he could provide them with a better, more stable, home. At the close of the hearing, Special Term denied the plaintiff's motion for a change in custody but established a framework aimed at protecting the children's well-being. In its order, Special Term provided, *inter alia,* that the defendant would retain permanent custody but that the plaintiff was to take temporary custody of the children whenever the defendant became disabled. The order provided further that the defendant would be deemed disabled when any of the following occurred: (1) she determines that she is about to become ill; (2) she enters a hospital as an in-patient; (3) her psychiatrist or his associate notifies the plaintiff that the defendant has refused their advice to enter a hospital; or (4) the plaintiff forms the opinion that the defendant is ill and her psychiatrist or

his associate fails to issue a "certificate" to the effect that the defendant does not then require hospitalization. By its terms, the court's order was issued in full contemplation of the likelihood that the defendant would be hospitalized for mental illness two or three times each year for approximately a week at a time. Plaintiff now appeals from this order. We are constrained to reverse. It is manifestly clear from this record that both parties are deeply concerned parents who love their children very much. Moreover, we are not unmindful of the fact that Special Term has expended substantial effort and has demonstrated great compassion in formulating a procedure by which the defendant would not be deprived of the custody of her children on account of an illness over which she has no control and against which she has long struggled. We, of course, are not unsympathetic to the defendant's plight. Yet we are commanded by law and by sound considerations of policy to resolve custody disputes, not out of sympathy for the circumstances of the parent, but out of concern for the best interests and welfare of the child (see Domestic Relations Law, §§ 70, 240; *Obey v Degling,* 37 NY2d 768; *Entwistle v Entwistle,* 61 AD2d 380, app dsmd 44 NY2d 851; *Matter of Mouscardy v Mouscardy,* 63 AD2d 973; see, also, *Matter of Bennett v Jeffreys,* 40 NY2d 543). With this in mind, we conclude that the framework established by Special Term will not best serve the welfare of the children. It contains far too many contingencies for the transfer of custody and relies too heavily on the efforts of individuals who are not answerable to the court. Moreover, the record leaves us entirely unconvinced that the defendant can, as she claims, invariably foretell the onset of her illness in time to make proper provision for the care of her children. and, if she fails to do so, it becomes problematic as to whether the plaintiff or the physicians can react in time to forestall exposure of the children to the manifestations of their mother's illness. We cannot ignore the possibility that, if the defendant enters the manic phase of her illness while the children are still in her custody, they might be placed in physical danger. Furthermore, we agree with the plaintiff that, as the children grow older, the effect of their witnessing bizarre behavior by their mother will become increasingly detrimental to their emotional well-being as well. We recognize that the record contains no substantial evidence that the children have been physically or emotionally injured by the defendant's past behavior. Nevertheless, the proof supports the plaintiff's contention that the defendant's illness is becoming progressively worse. It appears that increasingly large dosages of drugs are required to stabilize the defendant and, indeed, during one recent hospitalization, the amount of lithium necessary to treat her approached toxic levels. Like the defendant, the plaintiff is a loving parent. Unlike her, however, he is now able to provide the children with a stable family environment, and there can be little dispute over the importance of stability in the rearing of a child (see *Dintruff v McGreevy,* 34 NY2d 887, 888; cf. *Matter of Suzanne N. Y.,* 77 AD2d 433). Accordingly, we hold that the motion for a transfer of custody to the plaintiff should have been granted and we remit the case to Special Term so that it may fix visitation rights for the defendant which shall be as liberal as her illness and the welfare of the children will allow. Mollen, P. J., Titone, Mangano and Weinstein, JJ., concur.