TONI COOK, as Administratrix of the Estate of KENNETH COOK, Deceased, Respondent, v CITY OF NEW YORK, Appellant-Respondent; BROOKDALE HOSPITAL AND MEDICAL CENTER et al., Respondents-Appellants.

Second Department, July 13, 1981

APPEARANCES OF COUNSEL

*Allen G. Schwartz, Corporation Counsel (Fay Leoussis and Carolyn E. Demarest* of counsel), for appellant-respondent.

*O'Connor & Hays (Daniel J. Dillon* of counsel), for respondents-appellants.

*Reisler & Silverstein (Kresky, Sinawski & Davis [Melvin Reisler and Norman Bard]* of counsel; *Harry Kresky* on the brief), for plaintiff-respondent.

OPINION OF THE COURT

COHALAN, J.

In this action to recover damages for wrongful death and conscious pain and suffering, based upon allegations of assault, negligence and medical malpractice, the jury returned a verdict for the plaintiff in her representative capacity in the sum of $300,000. It apportioned the verdict at 75% ($225,000) against the defendant City of New York (the city) and 25% ($75,000) against the Brookdale Hospital and Medical Center (the hospital). It made no mention whatever of the other defendants, Dr. Gilbert Jody and Dr. Ahmed Uliah Mir. Judgment, with interest and costs, was duly entered on the jury's verdict on November 29, 1979. This appeal, brought on by the city and the hospital, followed. Also appealed from is so much of an order dated March 12, 1980 as denied the motion of the defendants hospital, Jody and Mir for an order pursuant to CPLR 4404.

For the reasons noted below, we reverse the judgment and remit the action to the Supreme Court, Kings County, for a trial *de novo*, with costs to abide the event. As to the order denying the motion of defendants hospital, Jody and Mir for an order pursuant to CPLR 4404, we affirm on the ground of untimeliness.

A short resumé of the facts will prove helpful.

On August 10, 1974 the plaintiff's intestate, Kenneth Cook, in an attempt to commit suicide, slashed his throat with a broken bottle. A cruising marked police car driven by Patrolman Terrence Ryan—of whom more below—accompanied by a sergeant took Cook to the hospital for emer-

gency treatment. Ryan called ahead to alert the emergency room. On the way the sergeant attempted, with limited success, to stanch the effusion of blood. Once at the hospital, a crew of hospital personnel under the leadership of defendant Mir placed Cook on a gurney (a form of stretcher) and proceeded to render treatment. The accumulated blood was cleared from his lungs and windpipe, and a transfusion of new blood was effected. During the treatment, which covered a period of about 45 minutes overall, no restraints were placed upon Kenneth Cook.

As the continued treatment and the transfusion took effect, Dr. Mir, as he reported in a signed statement dated July 15, 1975, noted that: "The patient was restless and was fighting and did not respond to requests to calm down, etc. He appeared he did not know what was going on at the time."

As noted, however, no attempt was made to restrain Cook at any time while he was on the gurney.

The sequence of events revealed that there came a time when Cook sat up, pulled out whatever tubes were in his body, and walked, stark naked except for his socks, out of the treatment room. Dr. Mir was unable to prevent his exit.

Cook ran into a wall and then turned around. Officer Ryan was in the corridor but was unable to seize Cook, who then picked up a laundry cart and started to swing it. He advanced toward Ryan, swinging the cart and twirling it around. Ryan tried to calm Cook, to no avail. Ryan then started to back up. At or about this moment, Cook swung the cart in the direction of two other police officers and toward his own brother, James, all three of whom had sought refuge in another treatment room. Ryan remained in the hall and the patient turned on him.

Ryan put up an arm to ward off the attack. The cart hit him on the left arm and shoulder and knocked him down on one knee. At this point, Ryan drew his revolver. Before drawing it, he pleaded with Cook to stop. Instead Cook raised the cart higher and Ryan shot him. Cook died almost instantly. No award was made for conscious pain and suffering.

■■ The trial continued to a conclusion and after the summations of counsel (unreported in the record) the court embarked upon its charge to the jury. It was in this phase of the case that errors occurred which impel us to reverse the judgment and remit for trial *de novo*.

With respect to the city, the court remarked as to Officer Ryan: "[H]e may not use deadly force if he knows that he can with complete safety to himself and others avoid the necessity of doing so by retreating", and further: "If you determine that Officer Ryan reasonably perceived that he was in danger of receiving a serious physical injury at the hands of Kenneth Cook *and that he could not retreat* any further, then the acts of Officer Ryan were justified and your verdict must be for the City of New York." (Emphasis supplied.)

The two statements are in direct conflict with sections 35.15 and 35.30 of the Penal Law. Section 35.15 reads, in pertinent part:

"2. A person may not use deadly physical force upon another person under circumstances specified in subdivision one[1] unless:

"(a) He reasonably believes that such other person is using or about to use deadly physical force. Even in such case, however, the actor may not use deadly physical force if he knows that he can with complete safety as to himself and others avoid the necessity of so doing by retreating; except that he is under no duty to retreat if he is: * * *

"(ii) * * * a peace officer * * * acting pursuant to section 35.30".[2]

Section 35.30, as pertinent, then read:

"1. [A] peace officer * * * may use physical force when and to the extent he reasonably believes such to be necessary * * * except that he may use deadly physical force * * * only when he reasonably believes that: * * *

"(c) Regardless of the particular offense which is the subject of the arrest * * * the use of deadly physical force

---

1. Subdivision 1 is not involved at bar.

2. The 1980 amendments to this subdivision and to section 35.30 are not applicable.

is necessary to defend the * * * peace officer * * * from what the officer reasonably believes to be the use or imminent use of deadly physical force."

On this occasion, it was Ryan's duty to arrest or subdue Kenneth Cook, and inasmuch as peace officers enjoy this special exemption status in the use of deadly physical force without the prior necessity of "retreating any further", we cannot say that the court's charge was not prejudicial to the defendant city. Consequently, we find that a new trial is necessary as to the city.

Anent the defendants hospital, Jody and Mir, we have a different problem. It is a time-honored rule in case law that in every action, whether tried to a court or jury, a determination must be made as to each person named as a defendant. Thus, if "A" sues "B" and "C" and a jury brings in a verdict against "B" alone, the complaint as against "C" is deemed dismissed and he is exonerated of all blame (Hyatt v New York Cent. & Hudson Riv. R. R. Co., 6 Hun 306). Here, however, as we know, the jury made no determination as to the individual defendants.

Thibodeau v Gerosa Haulage & Warehouse Corp. (252 App Div 615, affd 278 NY 551), on which the hospital in great part relies, is an exemplification of this rule. In Thibodeau, a youngster hitched a ride on a tractor trailer. When discovered by the driver of the rig, he was ordered off. In his haste the boy fell under the truck and eventually lost a leg by amputation. In the negligence action that followed, the jury brought in a verdict against the owner of the truck but was silent as to the driver defendant. By operation of law, the agent (driver) became entitled to dismissal of the complaint as to him; and as a corollary, since the action against the owner was derivative in nature, the employer, in the absence of a finding of negligence on the part of the employee, was also entitled to a dismissal. (See, also, Saulsbury v Braun, 223 App Div 555, affd 249 NY 618; Hosinger & Bode v Eleven Franklin Place, 268 App Div 197, affd 294 NY 790; Salkin v City of New York, 278 App Div 956.)

The gist of these decisions is that the failure of a jury to mention one of several defendants in its verdict is, as a matter of law, a verdict in favor of that defendant.

If we were to employ the *Thibodeau* doctrine at bar, then the hospital would go scot-free by virtue of the fact that the jury was silent as to Doctors Mir and Jody and inferentially exonerated them. The facts indicate otherwise. Here the court permitted, indeed acquiesced, in the actions of counsel to chart their own course during the trial. (See *Stevenson v News Syndicate Co.*, 302 NY 81, 87.)

The attorneys tacitly took the tack that the real defendants were the city and the hospital and acted accordingly; and when the time came for the charge, the court fell into the trap and neglected to inform the jury that because the doctors were named as defendants some disposition had to be made in the verdict as to them.

In the absence of such mention, the anomalous situation occurred that the principal (the hospital) was inculpated while the doctors appeared to be absolved of blame by the jury.

Perhaps if Officer Ryan had been named as a party defendant this contretemps would not have occurred. Obviously, since he was not named, the jury could make no determination as to him. By parity of reasoning, it would seem the jury could have fairly inferred that since no disposition was made or could have been made as against Ryan, the same would apply to the doctors. As we know, however, such is not the case; and on this point we hold that the course followed was in derogation of prevailing case law.

Examples of the court's reliance on the theory that the city and the hospital were the real defendants abound. There were 50 references in the charge dealing only with the hospital. Thus, in the course of a 56-page charge transcribed on 8½ by 11-inch paper, double-spaced, the court made the following remarks at various stages in the course of the charge:

"So, throughout the charge, when I speak of the *hospital*, you realize it might be the *hospital*, or the doctor or the nurses, the employees of the hospital."

*On liability:*

"If in your weighing process, the evidence on behalf of the plaintiff preponderates, is more favorable, then the

plaintiff has sustained her burden of proof against the *hospital* and you will then find a verdict in favor of the plaintiff"; and

"Now, supposing in your weighing process the scales are evenly balanced, then, under those circumstances, the plaintiff has not sustained her burden of proof and you would be obliged to find on behalf of the *hospital*."

*On malpractice:*

"As I indicated to you, this case is predicated on some alleged negligent acts, namely, an act of malpractice by the *defendant hospital* and negligent acts by the City of New York"; and, "Now, there was evidence in this case, that the decedent was brought into the hospital as an attempted suicide and that during the treatment he was accorded by the *hospital* he was given blood transfusions and other procedures were done to him. If you find that he was under a disability which limited his ability to protect himself from injury and that the defendant-*hospital* knew or in the exercise of reasonable care, should have known of that disability, then the *defendant* was required to use reasonable care and caution for the decedent's safety as the circumstances including that disability required"; and further

"If, from the evidence introduced by and on behalf of the defendant, Brookdale Hospital, you conclude that it is more probable that *Brookdale* was guilty of malpractice, proximately causing the decedent's death, than it was not, your finding on the issue of malpractice will be for the plaintiff".

*On the duty of the hospital:*

"And if harm or injury follows, the *hospital* is liable for money damages. The duty of a *hospital* to its patients is to furnish the patient with diligent, skillful care, competent attendants and safe equipment".

*On the verdict:*

"Now, members of the jury, you will be called upon to render a verdict that would indicate was the *hospital* alone responsible or was the City by the acts of Officer Ryan alone

responsible, or were they both responsible to some degree or was neither, were neither responsible".

*On damages:*

"If you find that there was malpractice * * * then you may assess damages against the *hospital* for all damages including the death that followed the alleged malpractice."

*On the verdict respecting the hospital:*

"If you find that the *hospital* alone was responsible, then your verdict will be against the *hospital* alone"; and

"Now, Mr. Foreman * * * then you will knock and you will tell us what your verdict is, whether it's for the plaintiff against the *hospital* alone, for the plaintiff against the City alone, for the plaintiff against both; and if it's against both, then what percentage of responsibility you find as to each."

In fairness to the court, there are passing references to the defendant doctors, but the entire charge is instinct with the thought that in speaking of the *hospital*, the court was also speaking as if the *hospital* and the city were the only defendants. At the conclusion of the charge, the trial counsel who was representing the *hospital* and the two doctors said, "No exceptions, your Honor."

In due course the jury reached a decision. When asked by the clerk, "What is your verdict?" the reply was: "THE FOREMAN: The jury finds Brookdale Hospital guilty and the City of New York guilty, both Brookdale Hospital and the City of New York." After the verdict was in, the court asked, "Any motions?", in response to which the following ensued: "MR. DILLON: Yes, your Honor. Defendant Brookdale Hospital, Dr[s]. Mir and Jody move to set aside the verdict as being contrary to the weight of evidence and as being excessive and against the law as well." No mention of the *Thibodeau* holding was made by defense counsel at that time although it might well have fallen within the final clause "and against the law as well."

Thereafter, the *hospital* and the two doctors made a motion pursuant to CPLR 4404 ("Post-trial motion for judgment and new trial"). CPLR 4405 ("Time and judge before whom post-trial motion made") notes in part that:

"A motion under this article shall be made before the judge who presided at the trial within fifteen days after decision, verdict or discharge of the jury." In his treatment of the motion, the Trial Judge remarked in the order appealed from that "[t]he jury verdict was rendered on November 9, 1979. Defendants' motion pursuant to CPLR 4404 was brought on December 14, 1979." As such it was untimely. He denied the motion, but at the same time he wrote in the order that: "Throughout the trial it was understood that the acts of the doctors were deemed to be those of the hospital. This theory of the two doctors and hospital being one was reinforced by the fact that the three were represented by one attorney." In our view, based on the unusual fact pattern in this case, the *Thibodeau* rule has no application. Rather, we are of the opinion that the rationale expressed in *Rush v Jagels "A Fuel Corp."* (264 App Div 535) should be applied.

*Rush (supra)* was an action for personal injuries. The plaintiff was a passenger in a taxi cab that collided with a truck. The cab was owned by defendant Feraco and the truck by Jagels "A Fuel Corp." David Rose was the truck driver.

The jury reported a verdict for the plaintiff for $1,500 against the corporate defendant. The trial court, in apparent reliance on *Thibodeau* (252 App Div 615, affd 278 NY 551, *supra*) pointed out that the corporation's liability was solely derivative, and since Rose, the truck driver, was not mentioned in the verdict, the verdict could not hold against Jagels. The Trial Justice declined to ask the jury a question as to their intention, but granted a motion for a new trial as against all the defendants. The Appellate Division (264 App Div, at pp 537-538) noted that:

"In the light of what occurred at the time the jury rendered its verdict, we think that it was neither final nor conclusive with respect to the two individual defendants. (See *Duerr* v. *Consolidated Gas Co.*, 104 App. Div. 465.)

"Our attention has been called to the fact that plaintiff moved to set the action down for trial again as against all parties and that this motion was granted and that no appeal had been taken from the order granting this motion.

In the interest of justice and fairness, in the peculiar circumstances of this case, we think that a new trial as against all parties should be had. It was so held in a somewhat similar situation in *Pangburn* v. *Buick Motor Co.* (211 N.Y. 228)."

The court then went on to point out that *Thibodeau* concerned an infant plaintiff who was a trespasser, as against Rush, who was a blameless passenger in a two-vehicle accident. In that light, Cook might also be considered without fault in the incident that led to his demise.

The circumstance that distinguishes this case from *Thibodeau v Gerosa Haulage & Warehouse Corp. (supra)* and the cases cited therein is that the attorneys and the Trial Judge, during the trial, treated Doctors Mir and Jody as if they were supernumeraries. They acted throughout the trial as if reference to the hospital blanketed the doctors in. To that degree, the attorneys and the court charted their own course as in *Stevenson v News Syndicate Co.* (302 NY 81, 87, *supra*). Consequently, it would be manifestly unfair to give the advantage to the doctors and to dismiss the complaint as against them solely because no verdict of the jury either inculpated or exonerated them.

We may say that the attorneys and the court were *in pari delicto* on the subject and that, therefore, the defendant doctors and the hospital should not be permitted to benefit by the error. Furthermore, if we were to adopt the reasoning of these defendants—since the jury failed to mention Jody and Mir in its verdict and since they were agents or employees of a known principal—the principal itself (the hospital) could conceivably claim to be considered free from blame. Such a result was certainly not in the contemplation of the jury. Its members took the law as instructed by the court and treated the doctors as part and parcel of the hospital, thus treating as a trinity what was actually three separate and discrete entities.

With respect to Ryan, the police officer who fired the lethal shot, since he was not named in the pleadings as a defendant, there could be no verdict as against him, and the doctrine of *respondeat superior* would apply.

Finally, inasmuch as we are remitting the case for a

trial *de novo*, we deem it unnecessary to consider the other points raised in the briefs of the contending parties.

MOLLEN, P. J., MARGETT and O'CONNOR, JJ., concur.

Judgment of the Supreme Court, Kings County, entered November 29, 1979, reversed and new trial granted, with costs to abide the event.

Order of the same court, dated March 12, 1980, affirmed insofar as appealed from, without costs or disbursements.