OPINION OF THE COURT
Jeffrey G. Stark, J.
On this motion for a change of custody by a father whose former wife has breached the restrictive residence provision of a nonmerged separation agreement by surreptitiously removing the children of the marriage to California, two equally strong policies are contraposed to each other: on the one hand, the policy of our courts to jealously protect the visitation rights of a noncustodial parent, and on the other, the policy of deferring jurisdiction of custody disputes to that jurisdiction best able to hear all relevant evidence concerning the children’s past, present and future circumstances.
For the reasons set forth at length hereafter, this court determines that it is in the children’s best interests that the matter be heard in California, where nearly all the relevant evidence can be found. The case involves neither child snatching nor forum shopping. Moreover, the papers before the court strongly suggest that the father is not, at present, a fit custodian of the children, whereas the mother *222 has made a strong showing that the children’s welfare has substantially improved in California. Since the court is confident that the California courts will be sensitive to the father’s visitation rights, the court declines to exercise its jurisdiction on the condition that appropriate proceedings be promptly commenced in the California courts.
FACTS
In a separation agreement dated June 22, 1982, the plaintiff mother and defendant father agreed that the mother would have custody of the children and the father would have “reasonable rights of visitation upon 48 hours notice.” It was further agreed that the mother would not remove with the children more than 200 miles from New York without defendant’s consent.
On March 25, 1983, in the Family Court of the State of New York, the above agreements were restated as the stipulated settlement of a custody petition initiated by the father. In addition, the father’s visitation was further refined as “week day and weekend visitation on his days off up to a maximum of ten days per month.” An order was entered May 16, 1983 incorporating these provisions.
On August 22, 1983, this court granted a conversion judgment of divorce to the mother on the default of the father, which judgment did not merge the June 22, 1982 separation agreement. The aforesaid judgment retained jurisdiction in the court to specifically enforce the provisions of the separation agreement capable of specific performance.
By order to show cause dated September 30, 1983, the father brought on this application to vacate the provisions of the judgment of divorce concerning custody and visitation and for an order granting him custody of the four children of the marriage. The basis of the application is his contention that on July 23,1983 without his knowledge or consent, the mother removed the children to California where they presently reside. Defendant states in his affidavit sworn to September 28 that he “only recently was * * * able to ascertain the whereabouts of the plaintiff and the children.”
In opposition to the motion, the mother states that defendant “unequivocally agreed to my move to Califor *223 nia.” She further states that during the marriage.the father, who is a police officer, frequently threatened herself and the children with physical violence, and that after the separation of the parties the father visited the children only infrequently (she denotes just 10 occasions on which the father visited the children between Oct. 30, 1982 and July 12, 1983). In addition, the mother states that in California she is sharing a home with her two brothers, who are very attentive to the children, and that the defendant’s parents live in the same town (Laguna Beach) and see the children at least five times per week.
In support of her position, plaintiff submits affidavits executed by defendant’s father and stepmother. These state, in substance, that in the past the father showed little interest in his children and that when he did see them he acted very inappropriately (such as telling his 10- and 11-year-old daughters that their mother “slept with ‘all the niggers in town’ ”). Defendant’s stepmother relates another incident in which defendant allegedly visited his son’s communion and “just walked in and told everyone he was the father, and they better all move over because he had a gun and would blow up the whole place if they did not.”
The defendant’s parents state the mother is giving the children a “good Christian education in California,” that the children are involved in sports and other activities and “are doing exceptionally well in school” whereas in New York (where the grandparents previously resided) the children were “nervous, withdrawn and so unhappy.” The defendant’s stepmother concludes her affidavit by stating: “I feel their mother took them to California to stabilize them and to give them a more happy and healthier home life.” The defendant’s father states in his affidavit that “[m]y son is presently having personal problems which he needs to deal with and in the meantime, the children are doing very well in California.”
Apropos of the grandfather’s statement, he attaches a letter from defendant to himself and defendant’s stepmother, dated August 8, 1983, in which defendant states, among other things:
“with everyone in the world trying to destroy me in the recent past I am now very careful with the company I keep.
*224 “I am best by myself well-protected, knowing that I am the most important person in my life.
“I’m sure this entire letter will end up with [plaintiff] wherever in California and with ever [sic] guy she’s with on any particular night.
“I lost everything that I loved so now its me, the [former marital] house and myself and the three of us are fine. I know me, myself or the house will never hurt me and I know nothing else.”
In his reply affidavit, the defendant does not controvert the episodes described in his stepmother’s affidavit, nor does he seek to put in context the letter quoted above except to state that “I am extremely depressed and emotionally void as a result of my wife’s unilateral move to California.”[1] Moreover the father does not deny the plaintiff’s charges that he frequently threatened the children, although he does deny that he physically abused the plaintiff and the children. In addition, he does not dispute that his visitation with the children since October, 1982 was as infrequent as plaintiff describes. While he does allege that he was repeatedly denied visitation, he offers no documentary proof to support his claim.
Most importantly, the father offers no affirmative evidence that he is a proper custodian for the children. To the contrary, his papers are solely directed at establishing that the plaintiff moved to California without his permission. With respect to this issue, the father annexes to his reply affidavit two letters from plaintiff, one dated August 10, and the other September 16, 1983. The August 10 letter, which gives no return address, states that the children are “enjoying their vacation.” The September 16 letter, which does give a return address in California, states in part: “I guess you know I am still out here, I know I told you we would be back Labor Day. I decided to stay and go to school it’s so cheap.”
DISCUSSION
The two letters quoted above demonstrate, without question, that the father did not consent to plaintiff removing *225 the children to California for the purpose of residing therein. Rather, they show that the mother took the children to California in July, ostensibly for the purpose of a vacation and probably with the father’s permission. Thus, the mother’s decision to remain in California constitutes a clear violation of the nonmerged separation agreement.
Nevertheless, no ground is shown to set aside the judgment of divorce. The father asserts that he was fraudulently induced not to oppose the entry of a divorce judgment on default by the misrepresentation that it would incorporate “the restrictive [residency] covenants contained in the Family Court order.” But these same “restrictive” covenants were contained in the separation agreement, which agreement was referred to in the divorce decree and which agreement survived the decree. Obviously, then, the failure to incorporate the Family Court order has caused defendant no injury since the decree provided that the nonmerged separation agreement can be specifically enforced. (Cf. Weiss v Weiss, 76 AD2d 863, affd 52 NY2d 170.) Consequently, defendant’s motion to vacate part or all of the judgment is denied.
The remaining question presented is whether this court should enforce the restrictive residence covenant of the agreement by ordering a change in custody. For the reasons which follow, the court declines to adjudicate the issue on grounds of forum non conveniens.
There can be no question but that our courts jealously protect the visitation rights of a noncustodial parent. Unless exceptional circumstances exist, e.g., that visitation is “inimical to the welfare of the child”, the noncustodial parent may not be deprived of reasonable and meaningful visitation. (Weiss v Weiss,, 52 NY2d, at p 175; Quinn v Quinn, 87 AD2d 643; Strahl v Strahl, 66 AD2d 571, affd 49 NY2d 1036.)
Absent such exceptional circumstances, a custodial parent who denies the other parent reasonable visitation acts at his or her peril. As the Second Department has stated “in no uncertain terms”, “the very act of interfering with visitation between young children and [a noncustodial parent] is ‘so inconsistent with the best interests of the children as to, per se, raise a strong probability that, the *226 [offending party] is unfit to act as custodial parent’”. (Matter of Gloria S. v Richard B., 80 AD2d 72, 77, quoting Entwhistle v Entwhistle, 61 AD2d 380, 384-385, app dsmd 44 NY2d 851.) A custodial parent who moves from the jurisdiction thereby depriving the other parent of reasonable visitation thus runs a high risk of losing custody. (See, e.g., Courten v Coarten, 92 AD2d 579; Munford v Shaw, 84 AD2d 810, mot for lv to app den 55 NY2d 606; Gloria S. v Richard B., supra; cf. Entwhistle v Entwhistle, supra [hearing ordered].)
In the instant case, the court must condemn the plaintiff’s actions in the strongest terms. While she undoubtedly believes that her decision not to return from California was in her own and her children’s best interests, she unilaterally did so in violation of defendant’s rights to visitation with the children and without prior court permission.
The ultimate issue here, however, is not whether plaintiff should be punished, but what are the best interests of the children. (See Matter of Nehra v Uhlar, 43 NY2d 242, 249, 251; Miles v Liebolt, 230 NYS2d 342.) And on this issue, the court is guided by the uniform policies adopted by New York (Domestic Relations Law, § 75-a et seq.) and other States, including California (Civ Code Ann, §§ 5150-5174), commonly known as the Uniform Child Custody Jurisdiction Act (UCCJA). (See Domestic Relations Law, § 75-a; Vanneck v Vanneck, 49 NY2d 602, 609.)
The UCCJA represents a considered effort to give stability to child custody decrees, to minimize jurisdictional competition, and to promote co-operation between courts in different States, all toward the end of resolving child custody disputes in the best interests of the child. (Vanneck v Vanneck, supra.) Among the purposes of the act is to “assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state”. (Domestic Relations Law, § 75-b, subd 1, par [c].)
*227 In furtherance of this purpose, the act contains an “inconvenient forum” provision (Domestic Relations Law, § 75-h) which permits a court to decline to exercise its jurisdiction in appropriate circumstances:
“3. In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others, whether:
“(a) another state is or recently was the child’s home state;
“(b) another state has a closer connection with the child and his family or with the child and one or more of the contestants;
“(c) substantial evidence concerning the child’s present or future care, protection, training, and personal relationships is more readily available in another state;
“(d) the parties have agreed on another forum which is no less appropriate; and
“(e) the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section seventy-five-b of this article.”
The intent of the provision is to encourage judicial restraint in exercising jurisdiction “ ‘whenever another state appears to be in a better position to determine custody of a child.’ ” (Matter of William L. v Michelle P., 99 Misc 2d 346, 352, quoting the Commissioners’ Note to the corresponding section of the uniform act; 9 Uniform Laws Ann, p 114.)
Application of these criteria is not a simple task. But as to factor (a), it is clear that New York, and not California is thé children’s “home state” (see Domestic Relations Law, § 75-c, subd 5), although the children have now resided in California for more than six months and have undoubtedly developed close ties there. Moreover, the plaintiff would be hard pressed to establish, under factor (b), that California has a “closer connection” with the case, when the parties lived most of their lives in New York, the children were raised in New York, and the separation agreement and the divorce involved exclusively the New York courts.
*228 Nevertheless, because the court finds under factor (c) that the pertinent evidence concerning the children’s present and future care, protection, training, and personal relationships is more readily available in California, and because of the weakness of the father’s claim to custody based upon his past record, his present situation and the children’s allegedly successful adaptation to California, the court determines that it is in the children’s best interests that the matter be litigated in California. Notwithstanding the fact that the children are presently residing there due to the wrongful act of their mother, this is a rare case where the policy of discouraging such misconduct is outweighed by the paramount concern — the children’s best interests. (Cf. Matter of Nehra v Uhlar, 43 NY2d, at p 250 [“the apparent imperative to discourage abduction must, when necessary, be submerged to the paramount concern in all custody matters: the best interest of the child.”]; Miles v Liebolt, supra.)
The papers before the court show that nearly all of the relevant evidence concerning the children’s present and future welfare is in California. Evidence as to the children’s present schooling, their health, their relations with their mother, uncles and grandparents, all must be found in that State. Undoubtedly, evidence as to the children’s life in New York prior to their mother’s move exists in New York,[2] but this evidence is of lesser importance than the evidence of the children’s present and future circumstances, which evidence can be more readily developed in California. Moreover, in view of the fact that both defendant’s parents (who formerly resided in New York) and plaintiff are prepared to contrast the children’s life in New York with the new life they face in California, it is clear that California and not New York has “ ‘optimum access to relevant evidence’ ”. (Cf. Vanneck v Vanneck, 49 NY2d, at p 610; Steinman v Steinman, 80 AD2d 892, app dsmd 54 *229 NY2d 641.) Since the interests of the children can be best determined in the forum that has optimum access to the relevant evidence, for this reason alone the court finds that California is a more appropriate forum. (See Vanneck v Vanneck, supra; Steinman v Steinman, supra; Matter of Leslie L.F. v Constance F., 110 Misc 2d 86.)[3]
Of no lesser importance is the fact that defendant has made no effort to show that he is a proper custodian. This is not a child-snatching case, hence there has been no prior finding that defendant is fit to be the custodial parent. Although the New York courts have sustained a custody transfer based upon a showing that the custodial spouse wrongfully denied the other spouse visitation rights by moving to a distant locale, these cases commonly emphasize that the noncustodial parent would make an equally fit custodian. (See, e.g., Mumford v Shaw, 84 AD2d 810, supra; Gloria S. v Richard B., 82 AD2d 72, supra; cf. Daniels v Daniels, 93 AD2d 877 [reversing change of custody order in favor of father based upon mother’s interference with visitation rights where no hearing was held to determine if father was a suitable custodian].) In contrast, based upon the papers before the court, it does not appear that defendant can establish his fitness for custody at the present time, particularly in view of his existing emotional problems. (Cf. Thomas J.D. v Catherine K.D., 79 AD2d 1015, app dsmd 53 NY2d 797.)
Indeed, defendant’s failure to dispute many, if not all, of the specific contentions contained in the affidavits of plaintiff and defendant’s parents strongly suggests that his past connection with these children has been both weak and destructive. These affidavits, the defendant’s letter of August 8, and his statement that he is “extremely depressed” yet not under psychiatric care, also go far to demonstrate that defendant’s present emotional health is poor and his ability to provide a good and stable environment for his children, should he obtain custody, is doubtful. (Cf. Matter ofRieser v Rieser, 73 AD2d 648, affd 50 NY2d 966.)
*230 Under such circumstances, retention of jurisdiction by this court is not in the children’s best interests, nor would it further the statutory purpose of discouraging continuing controversies in the interest of greater stability of the children’s home environment. (Domestic Relations Law, § 75-b, subd 1, par [d]; § 75-h, subd 3, par [e].) For it is clear that defendant is arguing for a change in custody essentially for punitive reasons, and were the court to grant a custody change, it is questionable whether the California courts would be bound by this court’s determination under the UCCJA. (See Bodenheimer, Progress Under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications, 65 Cal L Rev 978, 1005-1006.) As Professor Bodenheimer has observed in discussing cases involving custodial parents who have left the jurisdiction thereby diminishing the visitation rights of the noncustodial parent: “Although the Uniform Act requires recognition and enforcement of out-of-state custody decisions in general, punitive decrees do not command [such] respect * * * because they disrupt the stability and continuity of the child’s environment.” (Id,., at pp 1003-1004; see, also, id., at pp 1006-1007; cf. Matter of Berlin v Berlin, 21 NY2d 371, cert den 393 US 840 [affirming custody award to mother notwithstanding prior punitive custody change decree obtained by father in Maryland, based upon finding that enforcement of Maryland decree “could have a disruptive effect” on the children, contrary to their best interests].)
For all of the foregoing reasons, the court finds that New York is an inconvenient forum for the resolution of the custody issues. (Domestic Relations Law, § 75-h.) Consequently, the instant proceedings are stayed on the condition that plaintiff promptly institute a proceeding in the California courts seeking to modify the visitation provision of the separation agreement incorporated but not merged into the New York decree. (See Domestic Relations Law, § 75-h, subd 5; § 75-i, subd 2; Cal Civ Code Ann, § 5163.)[4] In so ruling, this court is mindful that California, as a signa *231 tory to the UCCJA (Cal Civ Code Ann, §§ 5150-5174), will undoubtedly give proper deference to the visitation rights of the defendant as established by his separation agreement. (Cf. Kumar v Superior Ct., 32 Cal 3d 689, 701-702 [in refusing to exercise jurisdiction over mother’s motion to modify New York custody/visitation decree “so long as that state has jurisdiction and does not decline to exercise it”, Supreme Court, en banc recognized in dicta that New York law requires that custodial parent reside with child in location reasonably conducive to exercise of visitation privileges, and affirmed (p 703, n 19) California’s “‘strong policy * * * to encourage the visitation of children with their parents’ ”]; Matter of Kern, 87 Cal App 3d 402 [declining to modify prior decree awarding custody to nonresident father, even temporarily, where divorced mother failed to show that child’s health or safety would be jeopardized if returned to father]; Smith v Superior Ct., 68 Cal App 3d 457 [holding mother in contempt for violation of order incorporating stipulation giving father certain visitation rights].)
Thus, in deferring to the jurisdiction of the California courts, this court is not thrusting the defendant into a jurisdiction hostile to his rights or overly jealous of its own residents’ claims. To the contrary, it is expected that the defendant will receive the same sympathetic consideration in California as would a father in the New York courts whose former wife had violated an agreement of separation and taken his children far from the family locus. All that should be different is that the California court will be in a position to hear all the relevant evidence and make a determination in the best interests of the children.

. Notwithstanding, as will be shown hereafter, it appears that at the time of the defendant’s August 8 letter the defendant believed his children were in California on vacation and would return to New York by Labor Day.

. In the event that defendant has practical difficulties in adducing this evidence in the California courts, the UCCJA permits him to ask that court to request that the New York courts hold a limited hearing as to the circumstances in this State, or otherwise assist the California courts in acquiring all relevant evidence. See sections 75-s and 75-t of the Domestic Relations Law, and parallel provisions in the California Civil Code (§§ 5167,5168). Defendant may also seek an order requiring plaintiff to pay for his travel and other necessary expenses s,o that he may appear personally in the California proceeding. (See Domestic Relations Law, § 75-1, subd 3; Cal Civ Code Ann, § 5160, subd [3].)

. Because it is essential that the court deciding the custody and visitation issues have an opportunity to assess, first hand, the evidence available in California, this court declines to retain jurisdiction over the ultimate issues and to merely seek a report from the California courts concerning the situation of the parties. (Cf. Domestic Relations Law, §§ 75-s, 75-t.)

. If plaintiff fails to so move within 60 days of service of a copy of this so-ordered memorandum decision with notice of entry, or if California declines jurisdiction, defendant may renew his application in this court. Nothing herein is intended to preclude defendant from seeking custody in the California courts, if he is so advised.