[No. H013512. Sixth Dist. Nov. 8, 1995.]

In re the Marriage of THOMAS M. FITZGERALD and CHRISTOPHER ELAINE KING.
THOMAS M. FITZGERALD, Respondent, v.
CHRISTOPHER ELAINE WILSON, Appellant.

COUNSEL

William M. Hilton for Appellant.

Gregory Scott MacSwain for Respondent.

OPINION

COTTLE, P. J.—In a contested jurisdictional hearing, the family court determined that Christopher Elaine Wilson, a resident of Texas, had consented to jurisdiction in California. Wilson appeals from the court's order, contending that her contacts with California were limited to opposing custody and visitation orders under the Uniform Child Custody Jurisdiction Act (UCCJA; Fam. Code, § 3400 et seq.), which would not serve as a basis for general jurisdiction, and, in any event, were not so pervasive as to justify the exercise of general jurisdiction over her. We agree and, for reasons we shall explain, reverse the trial court's order.

## FACTS

A. *Events Preceding Previous Appeal in This Case*

Christopher Elaine Wilson (mother) and Thomas M. Fitzgerald (father) were married on February 22, 1980, and are the parents of three children: Sean, born November 29, 1979; Scott, born February 9, 1983; and Todd, born August 12, 1984. The parties lived together in Florida from 1980 to 1982 and in California from 1982 to 1986. On June 30, 1986, mother and father and their children moved to Plano, Texas. On November 27, 1987, father moved to San Jose, California and mother remained in Texas with the children.

On September 6, 1989, Sean was sent from Texas to California. Both parents agreed that Sean would live with father for the 1989-1990 school year.[1]

On December 1, 1989, father filed a petition for dissolution of marriage in California. Mother was personally served in Texas on December 16, 1989. On December 7, 1989, mother filed a petition for divorce in Texas. On December 27, 1989, mother filed an amended petition for divorce in Texas, advising the court of the pending action in California. Father was served on January 2, 1990.

On April 17, 1990, a default was entered against mother in California. On May 31, 1990, without notice to father, the Texas court entered a final decree of divorce, awarding to mother, inter alia, sole physical custody of all three children. Father did not appear in that action and alleged that he did not receive notice of mother's intent to request a final decree. On June 26, 1990, a judgment for dissolution of marriage was entered in California. The judgment awarded the parties joint legal custody of the three children with primary physical custody of Sean to father.

On August 27, 1990, mother filed a motion to quash service and to enforce the Texas order. This motion also requested the California court to set aside the default entered on April 17, 1990, and the judgment of dissolution of marriage, including custody, visitation, child support and property division. Mother's motion also requested recognition of the Texas decree of divorce entered May 31, 1990, and its associated remedies relating to custody, visitation, child support, arrearages, and property division.

On December 26, 1990, mother and father entered into a stipulation and order resolving the property issues. Sean visited his mother in Texas for two

---

[1]Sean has continued to live with father in San Jose while his two brothers live with mother in Texas.

weeks over his 1990-1991 Christmas recess. In April 1991 he visited her over his spring recess.

On June 3, 1991, mother drove from Texas to California with Todd and Scott. Without father's consent, she picked up Sean at school and drove to Nevada. In Nevada Sean sought the assistance of law enforcement and was taken to child protective services. Following an appellate court ruling on June 7, 1991, he was returned to father in San Jose.

On June 24, 1991, mother's motion to quash was heard. The trial court issued a statement of decision which provided as follows: the California judgment of dissolution terminated the marriage of mother and father, but was void on the issues of child custody and support, division of property and attorney fees; the Texas court lacked subject matter jurisdiction over the dissolution and thus the Texas decree of divorce and all its provisions were of no force and effect and were not entitled to a full faith and credit in California; California was the home state of Sean when the custody dispute began on August 27, 1990; father would have physical custody of Sean until further order of the court; all evidentiary objections made at the hearing on the motion were moot because none of this evidence was considered in the decision; and mother's request for attorney fees was denied.

On August 5, 1991, mother filed a notice to vacate the judgment pursuant to Code of Civil Procedure section 663a. Following a hearing, the motion was denied. Mother then filed a petition for writ of mandate in this court on September 26, 1991, which was also denied. Meanwhile, on August 13, 1991, the trial court in Texas issued an order to return Sean and appointed an attorney to act as his guardian ad litem in Texas.

B. *Prior Ruling: No Personal Jurisdiction Over Mother*

The trial court in California found, among other things: "It does not appear in this case that at the time of the California dissolution proceeding, that the California court had personal jurisdiction over Mother. Mother was not physically present in the state, she was not domiciled here, nor is there any indication that she maintained any contacts with the state as to avail herself to the jurisdiction of the court. Therefore, while this court had subject matter jurisdiction over the dissolution, it did not have personal jurisdiction over Mother. Thus the court could terminate the marriage, but it could not make any orders regarding support, property division or attorney fees." The trial court denied mother's motion to quash service of summons on the ground it retained subject matter jurisdiction over the marriage res. In a prior appeal, we upheld the trial court's order.

## C. *Subsequent Events*

In its most recent order, the trial court related the following postappeal facts:[2] "On May 27, 1993, [father] filed an Order to Show Cause for child custody, visitation, injunctive order, attorney fees and costs, order allowing children as tax deductions and confirmation of property. The hearing was scheduled for June 15, 1993. [Mother] was served on June 1, 1993 for this hearing (presumably out-of-state). On June 10, 1993, she filed a Motion to Quash Service and Responsive Declaration to Order to Show Cause. While [mother] objected to the court's in personam jurisdiction in her Motion to Quash Service, she agreed to stay away orders from father's place of work and residence. She also requested that father be ordered to stay away from her residence and her vehicle. [Mother] also wrote a letter to Judge Levinger requesting that the June 15, 1993 OSC hearing be advanced due to the fact that she had purchased nonrefundable airline tickets to come to San Jose to visit her son Sean from June 10 to June 15, 1993 (unfiled letter dated June 3, 1993).

"On June 4, 1993, [father] filed another Order to Show Cause. This time he requested attorney fees and costs incurred as a result of the appeal filed by [mother]. That hearing was scheduled for July 13, 1993 in Department 17 before the Honorable Mary Jo Levinger. When [mother] appeared for the June 15, 1993 hearing, [father]'s attorney, Gregory S. MacSwain served her personally in the court house at 170 Park Center Plaza with the papers for the July 13, 1993 hearing (per unopposed offer of proof made by Gregory S. MacSwain at conference call in Judge Clark's chambers on October 21, 1994). [Mother] did not appear at the July 13, 1993 hearing. Upon submission of a supplemental declaration by husband's attorney regarding the costs and fees for appeal, the matter was taken under submission. On November 12, 1993, the court ordered [mother] to pay to [father]'s attorney the amount of $24,622.50 as and for attorney fees and costs.

"On August 10, 1994, [father] filed an Order to Show Cause requesting, inter alia, an order for child support and spousal support. It is again not clear when, where and how [mother] was served with process. [Mother] objected to [father]'s requests claiming that this court lacks personal jurisdiction over her to make any kind of support orders against her (MEMORANDUM RE: LACK

---

[2]The record does *not* include the first two orders to show cause (OSC's) to which the court alludes (i.e., the May 27, 1993, OSC or the June 4, 1993, OSC); nor does it include the court's November 1993 order. It does include mother's motion to quash service of summons, her responsive declaration to the May 27, 1993, OSC, a transcript of the June 15, 1993, hearing on the May 27, 1993, OSC, father's August 10, 1994, OSC, in which he requested child and spousal support, and each party's memoranda of points and authorities on the jurisdiction issue.

OF PERSONAL JURISDICTION OVER RESPONDENT filed August 25, 1994; original not on file)."

After taking the matter under submission, the trial court issued its order finding: "[Mother]'s contacts with California have been primarily related to pursuing custody and visitation issues in court. [Mother] objected to the court's personal jurisdiction after she was served with the OSC and TRO [temporary restraining order] papers (June 1, 1993 per [mother]'[s] motion to quash service; filed June 10, 1993). However, [mother] agreed to restraining orders in her Responsive Declaration (filed June 10, 1993) as well as at the June 15, 1993 hearing. Thus, she did not deal exclusively with custody and visitation issues. She not only agreed to orders (i.e., restraining orders), but also requested her own personal restraining orders."

From that order, mother timely appeals.[3]

### DISCUSSION

#### A. *Bases for Jurisdiction*

■ Due process permits the exercise of personal jurisdiction over a nonresident defendant in the following four situations:[4] (1) where the defendant is domiciled in the forum state when the lawsuit is commenced (*Milliken* v. *Meyer* (1940) 311 U.S. 457 [85 L.Ed. 278, 61 S.Ct. 339, 132 A.L.R. 1357]); (2) where the defendant is personally served with process while he or she is physically present in the forum state (*Burnham* v. *Superior Court of Cal., Marin County* (1990) 495 U.S. 604, 610-618 [109 L.Ed.2d 631, 639-644, 110 S.Ct. 2105]); (3) where the defendant consents to jurisdiction (*id.* at p. 617 [109 L.Ed.2d at p. 643]; *National Rental* v. *Szukhent* (1964) 375 U.S. 311 [11 L.Ed.2d 354, 84 S.Ct. 411]); and (4) where the defendant has sufficient "minimum contacts" with the forum state, such that the exercise of

---

[3]Although not specifically related to this appeal, the following additional facts can be gleaned from the record: Texas has continued to render custody and child support orders notwithstanding our previous opinion in *In re Marriage of Fitzgerald & King* (Feb. 26, 1993) H009198 (nonpub. opn.), in which we held that the California judgment of dissolution rendered June 21, 1990, had precedence over the Texas judgment of divorce rendered a month earlier because California was the first state to acquire jurisdiction over the parties. Under the Texas decree, mother obtained custody of all three children and father was ordered to pay child support. In May 1993, mother obtained an order confirming child support arrearages by father in a sum in excess of $24,000 and granting judgment and an order for withholding from earnings.

[4]California's "long-arm" statute, Code of Civil Procedure section 410.10, empowers California courts to exercise personal jurisdiction to the full extent permitted by due process. It provides: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

jurisdiction would not offend " 'traditional notions of fair play and substantial justice' " (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057]).

In holding that the California court had personal jurisdiction over mother and, therefore, could order her to pay child and spousal support, the trial court relied solely on the third basis for the exercise of personal jurisdiction, consent. In his respondent's brief, father relies additionally, and primarily, on the second basis, personal service while physically present in the state.[5]

## B. *Jurisdiction Based Upon Service of Process*

We shall address the personal service issue first.[6] Recently, the United States Supreme Court reaffirmed the principle, most often associated with *Pennoyer* v. *Neff* (1878) 95 U.S. 714 [24 L.Ed. 565], that in-state service of process confers jurisdiction over a physically present nonresident. (*Burnham* v. *Superior Court of Cal., Marin County, supra,* 495 U.S. 604.) In *Burnham,* a New Jersey resident father was served with court summons and divorce petition while he was in California on a business trip and to visit his children.

The court noted that state law precedents dating back to 1793, as well as English common law practice antecedents, uniformly have held that ". . . each State had the power to hale before its courts any individual who could be found within its borders, and that once having acquired jurisdiction over such a person by properly serving him with process, the State could retain jurisdiction to enter judgment against him, no matter how fleeting his visit." (*Burnham* v. *Superior Court of Cal., Marin County, supra,* 495 U.S. at pp. 610-611 [109 L.Ed.2d at pp. 639-640].) "[J]urisdiction based on physical presence alone constitutes due process," the court explained, regardless of whether the lawsuit is related to the nonresident's forum-related activities. (*Id.* at p. 619 [109 L.Ed.2d at pp. 644-645].)

In *Burnham* and the cases upon which it relies, the issue was whether mere transient presence in the forum state when *personally served with process* was alone sufficient to confer personal jurisdiction.

---

[5]The first basis, domicile, is not applicable here, as mother is a Texas resident. Nor is the fourth, "minimum contacts." In an opinion that is now final, this court has affirmed the trial court's finding that mother did not have the requisite contacts.

[6]"No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

■  In the instant case, however, mother was not personally served with process in California. It is undisputed that father served her with summons and the California dissolution petition *in Texas* on December 16, 1989. However, while mother was appearing at the June 15, 1993, OSC hearing at which she allegedly consented to jurisdiction by her actions (see *post*), "[father]'s attorney, Gregory S. MacSwain served her personally in the court house at 170 Park Center Plaza with the papers for the July 13, 1993 hearing (per unopposed offer of proof made by Gregory S. MacSwain at conference call in Judge Clark's chambers on October 21, 1994)." Father claims that service of this OSC was sufficient to confer personal jurisdiction over mother for all purposes. Yet he has cited no cases, and we have found none, that predicate jurisdiction on service of a motion or an OSC. We accordingly conclude that the second basis for the exercise of personal jurisdiction, service of process while in the forum state, is also not applicable here.

That leaves us with only one basis upon which the California courts could obtain personal jurisdiction over mother: consent. This is the basis upon which the trial court relied.

## C.  *Jurisdiction Based on Consent*

### 1.  *Trial Court's Ruling*

In its statement of decision, the trial court stated: "[Mother]'s contacts with California have been primarily related to pursuing custody and visitation issues in court. [Mother] objected to the court's personal jurisdiction after she was served with the OSC and TRO papers (June 1, 1993 per [mother]'s motion to quash service; filed June 10, 1993). However, [mother] agreed to restraining orders in her Responsive Declaration (filed June 10, 1993) as well as at the June 15, 1993 hearing. Thus, she did not deal exclusively with custody and visitation issues. She not only agreed to orders (i.e., restraining orders), but also requested her own personal restraining orders.[7] . . . Thus, [mother]'s conduct amounted to a general appearance and a waiver of any objections she may have had concerning the service in the court house on June 15, 199[3] and the lack of personal jurisdiction."

---

[7]On June 10, 1993, mother not only filed a motion to quash service of summons but also a "responsive declaration to order to show cause." In every paragraph of her responsive declaration, except paragraphs 7 and 8, mother begins, "I do not consent to the order requested. . . ." However, in paragraphs 7 and 8, upon which the court predicates jurisdiction, she states: "7. STAY-AWAY ORDERS [¶] 7.1 I consent to stay away from Petitioner's place of work. [¶] 7.2 I consent to stay away from Petitioner's place of residence except as necessary to visit Sean. [¶] 7.3 I do not consent to stay away from Sean's school. [¶] 7.4 I request that Petitioner be ordered to stay away from me, my place of lodging or residence, and my vehicle. [¶] 8. RESTRAINT ON PERSONAL CONDUCT [¶] 8.1 I agree not to molest, attack, strike, sexually assault, or otherwise disturb the peace of Petitioner, and request that this restraint be made mutual. [¶] 8.2 I agree not to contact or telephone Petitioner, and I request

■ Because she asked for affirmative relief, the trial court concluded that mother consented to jurisdiction. We disagree with this conclusion for two separate reasons: (1) the UCCJA permits a nonresident parent to contest custody and visitation orders without subjecting him- or herself to the court's general jurisdiction, and (2) Family Code section 2012 authorizes a person to appear in opposition to pendente lite orders without waiving a special appearance.

## 2. *UCCJA*

■ As a general rule, a defendant makes a general appearance when he or she takes any part in the action or proceeding. (Rest.2d, Conf. of Laws (1971) § 33, com. b, p. 136; Code Civ. Proc., § 1014.) Special rules apply, however, in family law proceedings. This is because a marriage dissolution action is an "in rem" proceeding and may be based on the domicile of just one spouse. Where, as here, the spouses live in different states, the court may adjudicate the marital "res" without obtaining personal jurisdiction over the nonresident spouse. In addition, where a California court is called upon to make child custody and visitation determinations in such a dissolution proceeding, the provisions of the UCCJA apply.

The purpose of the UCCJA is to give stability to child custody decrees, minimize jurisdictional competition, and promote cooperation between the states. (Fam. Code,[8] § 3401; *Marlow* v. *Marlow* (1983) 122 Misc.2d 221 [471 N.Y.S.2d 201].) Toward this end, the act sets forth various jurisdictional tests a state must satisfy before it can decide child custody matters. These tests generally deal with the *child*'s connections with the forum state.[9] (§ 3403.) However, the UCCJA does not require personal jurisdiction over a nonresident parent before the court may determine child custody issues. Indeed, such a requirement would thwart the purpose of the act, which is to provide a forum to resolve custody issues.

Thus, the UCCJA presupposes that a parent may participate in proceedings leading to custody or visitation determinations without exposing himself or herself to the personal jurisdiction of the forum state court. (*In re Marriage of Malak* (1986) 182 Cal.App.3d 1018, 1023 [227 Cal.Rptr. 841].)

that this restraint be made mutual. [¶] 8.3 I request that the above restraint be construed to include any communication by fax machine, and that any communication directly between Petitioner and Respondent by fax machine be prohibited. I further request that this order be made permanent."

[8]Unless otherwise specified, all further statutory references are to the Family Code.

[9]In addition, section 3403, subdivision (a)(3) authorizes a court of this state to exert jurisdiction if the child is physically present in this state and one of the parents is a victim of abuse by his or her former spouse. (See also § 6211, subd. (a).)

In addition, the UCCJA defines "Custody determination" as "[A] court decision and court orders and instructions providing for the custody of a child, including visitation rights; *it does not include a decision relating to child support or any other monetary obligation of any person.*" (§ 3402, subd. (b), italics added.)

Because California assumed jurisdiction over Sean in the instant case, mother was virtually forced to come into California to have contact with her child. In connection with the UCCJA custody proceedings, father filed a Judicial Council-approved form OSC and supporting declaration in which he requested orders be made regarding the following: box 1 (child custody), box 2 (visitation), box 4 (spousal support), box 5 (attorney fees and costs), box 7 (stay away orders), box 8 (restraint on personal conduct), and box 13 (other relief). Mother submitted a response in which she objected to items number 4, 5, and 13 "[f]or the reasons stated in my Motion to Quash Service of Summons pursuant to CCP 418.10." She objected to father's proposed child custody and visitation orders set forth in items number 1 and 2, and she proposed alternative orders. She generally agreed to father's requested stay away orders and restraints on personal conduct, items 7 and 8. (See fn. 7, *ante.*)

The issue in this case is whether mother's agreement to stay away from father and not to molest him related to child custody and visitation issues, which may properly be considered in UCCJA cases without subjecting a nonresident parent to in personam jurisdiction, or whether her agreement to the orders (and request they be made reciprocal) was more like a financial support issue, which would bring the case outside the UCCJA.

We believe it is self-evident that mother's agreement to father's requested stay away orders and her own request that the orders be made reciprocal were directly related to the custody and visitation orders that were also being sought. The orders in effect said that neither parent should harass the other. No one can doubt that such an order is reasonable and necessary to protect the child in a contested custody case. Under these circumstances, we hold that mother's acquiescence to the orders and request for reciprocity did not amount to a general appearance in this UCCJA action.

### 3. *Opposition to Pendente Lite Orders*

We also hold that mother did not consent to jurisdiction because her only action here was to appear in opposition to OSC applications for temporary relief brought while her motion to quash was pending. In the general provisions of the Family Code dealing with nullity, dissolution, and separation, section 2012, subdivision (a), provides: "During the time a motion

pursuant to Section 418.10 of the Code of Civil Procedure is pending, the respondent may appear in opposition to an order made during the pendency of the proceeding and the appearance shall *not* be deemed a general appearance by the respondent."[10] (Italics added.)

We are persuaded that mother's actions in this case did not exceed those permitted under section 2012. Unfortunately, there has not been a single reported case discussing section 2012 or its predecessor statute, former Civil Code section 4356 (enacted in 1984). Commentators suggest, however, that the phrase "in opposition to" in section 2012 be given a commonsense, though not an expansive, reading.

For example, Hogoboom and King, in discussing OSC hearings pending disposition of motions to quash, state: "Similarly, respondent has a statutory right to appear 'in opposition to' OSC applications for temporary relief *while the § 418.10 motion to quash is pending*, without risking a general appearance. [Fam. C. § 2012] (But again, no other responsive action may be taken if respondent wishes to preserve the special appearance.) [¶] [4.19] Comment: The statutory language—appearance 'in opposition to' may be somewhat misleading. The purpose of Fam. C. § 2012 is to ensure respondent's ability to *participate* in an OSC hearing without waiving a special appearance. I.e., under this provision, and coupled with the authority of Fam. C. § 213[11] . . . , by appearing 'in opposition to' an OSC for temporary relief, respondent should be able to file a responsive declaration *requesting* an order *alternative* to that requested by the moving party—on the same issues raised by the moving party (e.g., pendente lite visitation)—and still preserve his or her special appearance pending outcome of the jurisdictional dispute." (Hogoboom & King, Cal. Practice Guide: Family Law 1 (The Rutter Group 1995) ¶¶ 4:18 to 4:19, pp. 4-5 to 4-6.)

Having read, and reread, mother's eight-page responsive declaration to OSC, the only conclusion we can reach is that mother was very much opposed to the pendente lite orders that father was proposing and that she appeared "in opposition to" them. This view is not altered by the fact that,

---

[10] A Code of Civil Procedure section 418.10 motion is a motion to quash service of summons. Mother filed such a motion on June 10, 1993, along with her responsive declaration to the OSC. (See fn. 7, *ante.*) At the June 15, 1993, hearing on the OSC, mother asked the trial court if it was going to rule on her motion to quash. The court responded, "We can put that on the next proceedings." Mother did not appear at the next proceedings.

[11] Section 213, subdivision (a) provides: "In a hearing on an order to show cause, or on a modification thereof, or in a hearing on a motion, other than for contempt, the responding party may seek affirmative relief alternative to that requested by the moving party, on the same issues raised by the moving party, by filing a responsive declaration within the time set by statute or rules of court."

with respect to stay away orders and restraints on personal conduct, she asked that the orders be made mutual and be construed to include harassing facsimiles. This did not amount to acquiescence in personal jurisdiction in the circumstances of this case; rather it was nothing more than "*requesting* an order *alternative* to that requested by the moving party—on the *same issues* raised by the moving party . . . ." (Hogoboom & King, Cal. Practice Guide: Family Law 1, *supra*, ¶ 4:19, p. 4-6.)

In summary, we hold that mother did not consent to jurisdiction by the California courts both because her modest requests related to child custody and visitation issues that are subject to UCCJA jurisdiction and because section 2012 authorizes a party who has filed a motion to quash service of summons to respond to pendente lite orders.

### DISPOSITION

The trial court's order is reversed. Costs on appeal are awarded to appellant.

Bamattre-Manoukian, J., and Wunderlich, J., concurred.